**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ANGEL JENKINS, individually and on behalf of all others similarly situated,

Plaintiff,

-against-

**SPORTIF USA, INC.,**

Defendant,

Docket No. ____________

CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

---

Plaintiff, ANGEL JENKINS ("Plaintiff" or "Ms. Jenkins") individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through her undersigned counsel, **Robert Schonfeld, Esq.** of JOSEPH & NORINSBERG, LLC, brings this action against SPORTIF USA, INC. ("Sportif USA" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its ecommerce Website, www.sportif.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. **Plaintiff ANGEL JENKINS** is a resident of New York, New York, and is legally blind due to Retinitis Pigmentosa**,** a progressive retinal degenerative disease that causes severe visual field constriction and substantial central vision loss. As documented in the New York State Office of Children and Family Services Report of Legal Blindness, completed by Dr. Robert Friedman, M.D. of Mount Sinai Morningside on April 12, 2025**,** Plaintiff meets the statutory definition of legal blindness because her better eye has a visual field limitation of less than 20 degrees**.** Dr. Friedman identified **Retinitis Pigmentosa** as the cause of her blindness and certified her as legally blind for purposes of registration with the New York State Commission for the

Blind. *(See Exhibit A.)*

2. Due to her permanent and progressive visual impairment, Ms. Jenkins relies exclusively on screen-reading software, including NonVisual Desktop Access (NVDA), to navigate digital interfaces, read product information, and complete online transactions. Her reliance on assistive technology is essential to her ability to access goods and services on equal terms with sighted consumers. NVDA's ability to interpret properly coded website is critical to her independence, safety, and daily functioning.

3. Plaintiff brings this civil action against SPORTIF USA, INC., for its failure to design, construct, maintain, and operate its highly interactive e-commerce website, www.sportif.com in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website, and therefore to the essential products and services offered therein, constitutes unlawful discrimination in violation of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 et seq., and related state and city civil rights laws.

4. **Defendant Sportif USA, Inc.** ("Sportif USA") is a private, family-owned corporation incorporated in the State of Nevada on April 26, 1995, with its principal place of business located at 1415 Greg Street, Suite 101, Sparks, Nevada 89431. Sportif USA traces its origins to 1965 and has operated continuously as a family-run apparel company for more than six decades. Through its nationwide direct-to-consumer e-commerce website, www.sportif.com, Sportif USA markets and sells men's apparel—including stretch shorts, print shirts, pants, and accessories—from brands such as Sportif USA, Tori Richard, Hook & Tackle, and Reyn Spooner. Sportif USA conducts substantial business in interstate commerce and regularly offers its products for sale to consumers throughout the United States, including residents of the State of New York.

At all relevant times, Sportif USA has owned, operated, controlled, and maintained its e-commerce website as a primary channel through which consumers browse, select, and purchase its apparel products.

5. Defendant is a "place of public accommodation" within the meaning of Title III of the ADA because it owns and operates a commercial Website, www.sportif.com that offers goods and services to the general public. The Website functions as a sales establishment and service establishment under 42 U.S.C. § 12181(7), and Defendant is therefore required to ensure that blind and visually impaired consumers have full and equal access to its online goods, services, and digital content.

6. On multiple occasions in 2026, including but not limited to February 3, 2026, February 4, 2026, March 8, 2026, and a final time on March 10, 2026, Plaintiff attempted to access Defendant's website using NVDA for the purpose of browsing and purchasing several of their Hook & Tackle Beer Can Island Cargo and Original Shorts and various Tori Richard Shirts as gifts. Plaintiff sought to review product descriptions, colors, available sizes, pricing, delivery options, and to complete a purchase independently.

7. Defendant's Website contains numerous accessibility barriers that prevent blind and visually impaired users from independently navigating, browsing, and purchasing merchandise. A SortSite accessibility audit dated March 21, 2026, identified 7 distinct WCAG 2.1 Level A violations, 2 Level AA violations, and 5 Level AAA issues across 121 pages of the Website. These violations affect core e-commerce functions, including product browsing, form completion, navigation, and checkout.

8. The Website's accessibility failures include, but are not limited to:

(a) all fieldset elements lacking legend labels, affecting 17 pages including product pages (WCAG 2.1 A, H71);

(b) HTML form controls with no accessible name on the contact page (WCAG 2.1 A, F68);

(c) data tables on the shipping-policy, sizing, and stretch pages lacking proper row and column headers and missing role=presentation on layout tables (WCAG 2.1 A, F91);

(d) iframe and frame elements on the homepage lacking title attributes (WCAG 2.1 A, 4.1.2);

(e) links on the homepage with no accessible name, preventing screen readers from voicing link destinations (WCAG 2.1 A, F89);

(f) several links on the brands and FAQs pages sharing the same link text and surrounding context but navigating to different destinations (WCAG 2.1 A, F63);

(g) the visual label "shopping cart" not matching the accessible name "Cart with 0 items" on 122 pages across nearly the entire site (WCAG 2.1 A, F96);

h) improper use of aria-label or aria-labeled on elements and roles that prohibit naming, affecting 122 pages; and

(i) insufficient text-to-background color contrast failing WCAG 2.1 AA standard 1.4.3, affecting 121 pages.

9. Additional testing using the WAVE Web Accessibility Evaluation Tool report for the Hook & Tackle Seacliff 2.0 Long Sleeve Shirt product page (https://www.sportif.com/hook-tackle-seacliff-2-0-long-sleeve-shirt/) revealed 15 errors, including 1 missing alternative text, 9 linked images missing alternative text, 2 missing form labels, 2 empty form labels, 1 empty button, and 1 very low contrast error, with an overall AIM Score of 6.3 out of 10. The WAVE report for the Tori Richard products page (https://www.sportif.com/tori-richard) revealed 33 errors, including 1 missing alternative text, 26 linked images missing alternative text, 5 missing form labels, 1 empty button, and 1 skipped heading level, with an overall AIM Score of 4.5 out of 10. Exhibit B

10. The SortSite page issues report further reveals that the homepage (https://www.sportif.com/) contains 26 distinct issues including visual labels not matching

accessible names, iframes without title attributes, links without accessible names, broken links returning HTTP 404 errors, CSS validation errors, duplicate IDs, and improper use of ARIA attributes on prohibited roles. Individual product pages each contain 16 to 18 distinct issues, including missing alt text on linked images, broken links, insufficient contrast, and duplicate IDs. A broken link at https://www.sportif.com/cdn-cgi/l/email-protection returns HTTP 404. Exhibit C.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

12. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq.*) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") & § 296 *et seq.*; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and **(c)** because Plaintiff resides in New York County**,** accessed and attempted to use the Website from her home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action—including the denial of equal access to Defendant's online goods, services, and digital content—occurred within this District.

14. Defendant is subject to personal jurisdiction in this District because it transacts business in New York, maintains a commercial website accessible to and targeted at residents of

New York, ships products to customers in New York, and has derived substantial revenue from consumers in the State of New York.

15. Defendant conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling products to New York consumers through its highly interactive retail Website, https://www.sportif.com/. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.***,** 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Romero v. 88 Acres Foods, Inc.***,** 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.***,** 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Court***,** 592 U.S. ___ (2021); *South Dakota v. Wayfair, Inc.*, 585 U.S. ___ (2018).

16. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over out-of-state website operators whose digital platforms target or serve New York consumers.

## PARTIES

17. Plaintiff ANGEL JENKINS is a legally blind individual residing at 228 West 124th Street, Apt. #23, New York, New York 10027, within the Southern District of New York. As

documented in a Report of Legal Blindness (OCFS-4599) completed on April 12, 2025, by Dr. Robert Friedman, M.D., an Ophthalmologist at Mount Sinai Morningside, located at 1001 Park Avenue, New York, New York 10028, Ms. Jenkins has been diagnosed with Retinitis Pigmentosa, a progressive hereditary retinal dystrophy that causes degeneration of the photoreceptor cells, ultimately resulting in severe central visual impairment. Ms. Jenkins is registered with the New York State Commission for the Blind and Visually Handicapped ("CBVH") under Registration No. A.19038. Because of her irreversible vision loss, Ms. Jenkins relies exclusively on screen-reader software, including NVDA, to navigate digital interfaces, read product information, and complete online transactions independently.

18. Defendant Sportif USA, Inc. ("Sportif USA") is a private, family-owned corporation incorporated in the State of Nevada on April 26, 1995, with its principal place of business located at 1415 Greg Street, Suite 101, Sparks, Nevada 89431. Sportif USA traces its origins to 1965 and has operated continuously as a family-run apparel company for more than six decades. Through its nationwide direct-to-consumer e-commerce website, www.sportif.com, Sportif USA markets and sells men's apparel—including stretch shorts, print shirts, pants, and accessories—from brands such as Sportif USA, Tori Richard, Hook & Tackle, and Reyn Spooner. Sportif USA conducts substantial business in interstate commerce and regularly offers its products for sale to consumers throughout the United States, including residents of the State of New York. At all relevant times, Sportif USA has owned, operated, controlled, and maintained its e-commerce website as a primary channel through which consumers browse, select, and purchase its apparel products.

## NATURE OF ACTION

19. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C.

§ 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

20. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

21. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

22. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

23. Plaintiff, Angel Jenkins is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28

C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

24. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."
>
> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

25. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

26. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements

b. Unlabeled frames and navigation regions

c. Scripts without accessible alternatives

d. Inaccessible forms and input fields

e. Content conveyed solely through visual presentation

f. Inability to resize text without loss of functionality

g. Time limits that cannot be adjusted or disabled

h. Missing or ambiguous page titles

i. Links lacking descriptive context

j. Keyboard focus indicators that are not discernible

k. Undetectable default language settings

l. Components that trigger unexpected context changes

m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

27. Plaintiff ANGEL JENKINS is a legally blind consumer residing in New York County, New York, and an active online consumer who regularly uses the NVDA screen reader to browse, research, compare, and purchase products from e-commerce websites. Ms. Jenkins has a genuine, bona fide interest in purchasing men's clothing products from Sportif USA's Website, including print shirts and casual wear as gifts for family members and close friends, including her

home health aide with whom they share a long-term relationship.

28. Retinitis Pigmentosa is a permanent, non-reversible condition for which there is no curative treatment. Ms. Jenkins remaining functional vision is insufficient for reading standard print, recognizing images, or visually interpreting digital interfaces. As a result, she depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

29. On February 3, 2026, Ms. Jenkins first visited the Sportif USA Website at https://www.sportif.com using her NVDA screen reader with the intent to browse and purchase specific products. She navigated to the Tori Richard products page (https://www.sportif.com/tori-richard) and then to the Tori Richard Tropic Code Print Shirt, product page (https://www.sportif.com/tori-richard-tropic-code-print-shirt/), seeking to purchase the shirt priced at $128.00 as a gift for a family member. On the Tori Richard products page, NVDA encountered 26 linked product images with missing alternative text, causing the screen reader to announce only "link, image" with no product identification whatsoever. Five missing form labels on the size and color selectors had no accessible labels, 1 empty button provided no indication of its function, and the visual label "shopping cart" was not reflected in the accessible name "Cart with 0 items." Ms. Jenkins could not identify which product she was viewing, could not determine available sizes or colors, and was forced to abandon her attempt to purchase the Tori Richard Tropic Code Print Shirt.

30. On February 4, 2026, Ms. Jenkins returned to the Sportif USA Website to attempt purchasing the Hook & Tackle Seacliff 2.0 Long Sleeve Shirt (https://www.sportif.com/hook-tackle-seacliff-2-0-long-sleeve-shirt/), priced at $65.00, as a gift for her home health aide, who enjoys fishing. On the product page however, NVDA encountered 9 linked images missing

alternative text, 2 missing form labels for size and color selectors, 2 empty form labels, 1 empty button, and 1 very low contrast error making supplemental text imperceptible. She attempted NVDA heading navigation (pressing the "H" key to jump between headings) but the skipped heading levels caused disorientation. The iframe element on the page lacked a title attribute, preventing NVDA from announcing its purpose. Ms. Jenkins could not select a size or color and was again unable to complete her purchase of the Hook & Tackle Seacliff 2.0 Long Sleeve Shirt.

31. On March 8, 2026, Ms. Jenkins made a third attempt to shop on the Sportif USA Website, this time navigating to the Hook & Tackle Beer Can Island® Cargo Short product page (https://www.sportif.com/hook-tackle-beer-can-island-cargo-short-0m019910), priced at $50.00, which she wanted to purchase as a companion gift for the same friend. The same systemic barriers persisted across the site: fieldset elements without legend labels on 17 pages prevented NVDA from voicing form control groupings, links on multiple pages had no accessible name causing NVDA to read raw URLs, and several links shared identical text "Sportif USA" but navigated to different destinations, confusing her screen reader output. Insufficient text-to-background color contrast (failing WCAG 2.1 AA 1.4.3) on 121 pages rendered supplemental product details imperceptible given her limited residual vision. Ms. Jenkins was unable to complete any purchase of the Hook & Tackle Beer Can Island Cargo Short.

32. On March 10, 2026, Ms. Jenkins returned to the Website one final time, attempting once more to purchase all three items: the Tori Richard Tropic Code Print Shirt ($128.00), the Hook & Tackle Seacliff 2.0 Long Sleeve Shirt ($65.00), and the Hook & Tackle Beer Can Island Cargo Short ($50.00). On all product pages, the identical accessibility barriers remained unremediated: (a) the 122 pages with visual labels not matching accessible names still caused NVDA to mismatch what was displayed versus what was voiced; (b) the homepage iframe still

lacked a title attribute; (c) data tables on the sizing page lacked proper th headers, preventing her from understanding size charts; (d) 121 pages still had insufficient text-to-background color contrast; (e) fieldset elements on 17 pages still lacked legend labels; and (f) links on the brands and FAQs pages continued to share the same link text but navigate to different destinations. Ms. Jenkins was unable to independently select sizes, read product specifications, or complete any purchase. She ultimately abandoned her shopping session in frustration.

33. Ms. Jenkins however intends to return to the Sportif USA Website to purchase the Tori Richard Tropic Code Print Shirt ($128.00) as a gift for a family member, the Hook & Tackle Seacliff 2.0 Long Sleeve Shirt ($65.00) as a gift for a friend who enjoys fishing, and the Hook & Tackle Beer Can Island Cargo Short ($50.00) as a companion gift for the same friend, once the accessibility barriers documented herein are remediated. Her interest in these products is genuine and continuing. Ms. Jenkins has no adequate alternative means to purchase these specific products, as they are sold through Sportif USA's direct-to-consumer Website. Her visits to the Website were genuine and purposeful, motivated by her desire to purchase these specific products on the specific product pages she visited on February 3, 2026, February 4, 2026, and on March 8, 2026. On each occasion, she attempted to read product descriptions, review specifications, select sizes, and add items to her cart but was prevented from doing so by concrete, page-level accessibility barriers affecting form labels, linked images, form controls, headings, link text, color contrast, and page structure. Her inability to complete these transactions does not diminish her interest in the Website; it reinforces her motivation to return once those specific barriers are removed so that she can buy the exact products she originally sought.

34. On information and belief, Defendant has operated for years https://www.sportif.com without implementing WCAG-compliant accessibility protocols. Despite

longstanding federal guidance and the widespread availability of automated testing tools, Defendant has failed to remediate the barriers identified in this action. The very same issues persist across product listings, category pages, and navigational flows, reflecting a systemic disregard for blind and visually impaired users.

35. Plaintiff has suffered, and continues to suffer, a concrete and particularized injury-in-fact caused by Defendant's failure to make its Website accessible. This injury is (a) traceable to Defendant's conduct, and (b) redressable by a favorable decision of this Court ordering Defendant to bring its Website into compliance with the ADA and WCAG 2.1 Level AA standards.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action on behalf of herself and a class of all other similarly situated persons pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2).

37. The proposed class is defined as: All legally blind individuals in the United States who have been denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's Website, https://www.sportif.com, due to Defendant's failure to design, construct, maintain, and operate the Website to be fully accessible to and independently usable by blind and visually impaired persons who use screen-reading software, during the applicable statute of limitations period.

38. The proposed New York sub-class is defined as: All legally blind individuals in the State of New York who have been denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's Website due to accessibility barriers, during the applicable statute of limitations period.

39. Numerosity (Fed. R. Civ. P. 23(a)(1)): The proposed class and sub-class are so numerous that joinder of all members is impracticable. According to the National Federation of

the Blind, approximately 7.6 million Americans are visually impaired, and approximately 1.3 million are legally blind. A significant portion of these individuals use screen-reading software and have been or will be denied equal access to Defendant's Website.

40. Commonality (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all members of the class, including: (a) whether Defendant's Website is a "place of public accommodation" under the ADA; (b) whether Defendant's Website denies blind and visually impaired individuals full and equal access to its goods and services; (c) whether Defendant has failed to take steps to make its Website accessible in violation of the ADA, NYSHRL, NYCRL, and NYCHRL; and (d) whether Defendant's conduct constitutes discrimination under applicable federal, state, and city laws.

41. Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claims of the proposed class. Like all class members, Plaintiff is a legally blind individual who has been denied full and equal access to Defendant's Website due to accessibility barriers that affect all blind users uniformly.

42. Adequacy (Fed. R. Civ. P. 23(a)(4)): Plaintiff will fairly and adequately represent and protect the interests of the class. Plaintiff has retained counsel experienced in ADA accessibility litigation and has no interests antagonistic to those of the class.

43. Injunctive Relief Class (Fed. R. Civ. P. 23(b)(2)): Defendant has acted on grounds generally applicable to the class, making appropriate final injunctive relief and corresponding declaratory relief appropriate with respect to the class as a whole. The accessibility barriers on Defendant's Website affect all blind and visually impaired users identically.

## FIRST CAUSE OF ACTION
**Violation of Title III of the Americans with Disabilities Act**
**(42 U.S.C. §§ 12181 et seq.)**

44. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32 as though fully set forth herein.

45. Section 302(a) of Title III of the ADA provides that:

> "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

46. Defendant's Website, https://www.sportif.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

47. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

48. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

49. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, https://www.sportif.com, has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

50. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

51. Defendant has discriminated against Plaintiff by failing to design, construct, maintain, and operate its Website to be fully accessible to and independently usable by Plaintiff and other blind and visually impaired individuals, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

52. Plaintiff is entitled to injunctive relief requiring Defendant to bring its Website into compliance with the ADA by making it fully accessible in conformance with WCAG 2.1 Level AA.

53. Plaintiff is also entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205.

**SECOND CAUSE OF ACTION**
**Violation of the New York State Human Rights Law**
**(N.Y. Exec. Law §§ 290 et seq.)**

54. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40 as though fully set forth herein.

55. The NYSHRL provides that "[n]o person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation ... shall directly or indirectly refuse, withhold from or deny to any person ... any of the accommodations, advantages, facilities or privileges thereof." N.Y. Exec. Law § 296(2)(a).

56. Defendant's Website constitutes a place of public accommodation within the meaning of the NYSHRL.

57. Defendant has violated the NYSHRL by failing to make its Website accessible to Plaintiff and other blind and visually impaired individuals, thereby denying them full and equal enjoyment of the goods, services, and accommodations available through the Website.

58. Under Article 15 N.Y. Executive Law § 296(2)(a) “it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

59. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y.

Executive Law § 296(2)(a), § 296(2)(c)(i).

60. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

61. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

62. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large

business entities and government agencies to ensure websites are accessible.

63. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

64. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

65. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

66. Plaintiff is entitled to compensatory damages, injunctive relief, and reasonable attorneys' fees and costs under the NYSHRL.

## **THIRD CAUSE OF ACTION**
**Violation of the New York State Civil Rights Law**
**(N.Y. Civ. Rights Law §§ 40 et seq.)**

67. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 45 as though fully set forth herein.

68. The NYCRL provides that "[a]ll persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement." N.Y. Civ. Rights Law § 40.

69. Defendant has violated the NYCRL by denying Plaintiff and other blind and visually impaired persons full and equal access to the accommodations, advantages, facilities, and privileges of its Website.

70. Plaintiff is entitled to compensatory damages of not less than $500 per violation, as provided by N.Y. Civ. Rights Law § 40-d, as well as injunctive relief and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**Violation of the New York City Human Rights Law**
**(N.Y.C. Admin. Code §§ 8-101 et seq.)**

71. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 49 as though fully set forth herein.

72. The NYCHRL provides broader protections than its state and federal counterparts. It prohibits discrimination in places of public accommodation and is to be construed liberally to accomplish its remedial purposes.

73. Defendant has violated the NYCHRL by failing to ensure that its Website is accessible to and usable by blind and visually impaired individuals, thereby denying Plaintiff and other similarly situated individuals the full and equal enjoyment of goods, services, and accommodations.

74. Plaintiff is entitled to compensatory damages, civil penalties, injunctive relief, and reasonable attorneys' fees and costs under the NYCHRL.

**FIFTH CAUSE OF ACTION**
**Declaratory Relief**
**(28 U.S.C. §§ 2201 et seq.)**

75. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 53 as though fully set forth herein.

76. An actual controversy exists between Plaintiff and Defendant concerning Defendant's obligations under the ADA, NYSHRL, NYCRL, and NYCHRL to make its Website accessible to blind and visually impaired individuals.

77. Plaintiff is entitled to a declaratory judgment that Defendant's Website violates the ADA, NYSHRL, NYCRL, and NYCHRL due to its inaccessibility to blind and visually impaired individuals who rely on screen-reading technology.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and grant the following relief:

a. Certify this action as a class action under Fed. R. Civ. P. 23(a) and 23(b)(2), appoint Plaintiff as class representative, and appoint Plaintiff's counsel as class counsel;

b. Issue a permanent injunction requiring Defendant to design, construct, maintain, and operate its Website in full compliance with WCAG 2.1 Level AA, the ADA, and all applicable accessibility standards, including but not limited to: (i) adding accessible names and alt text to all images, buttons, and form controls; (ii) ensuring all interactive elements are keyboard-operable and properly voiced by screen readers; (iii) providing sufficient color contrast between text and background; (iv) using descriptive, non-ambiguous link text; (v) properly structuring headings, fieldset legends, and ARIA roles; (vi) adding title attributes to all iframe and frame elements; and (vii) retaining an independent accessibility consultant to conduct periodic audits;

c. Award Plaintiff and the class compensatory damages, including statutory damages of not less than $500 per violation under the NYCRL;

d. Award Plaintiff and the class punitive damages as permitted by law;

e. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and applicable state and city law;

f. Issue a declaratory judgment that Defendant's Website violates the ADA, NYSHRL, NYCRL, and NYCHRL;

g. Award pre-judgment and post-judgment interest; and

h. Grant such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
March 25, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York, 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com